IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RECO HALL,<br><br>Defendant. | )<br>)<br>) 2:20-cr-340-NR<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

Defendant Reco Hall moves the Court to authorize the service of a subpoena on the Pittsburgh Bureau of Police that would require the production of certain categories of documents that Mr. Hall claims are relevant to the upcoming evidentiary hearing on his pending motion to suppress. Mr. Hall has moved to suppress all evidence collected pursuant to a stop of a vehicle in which he was a passenger and a subsequent search of a bag that was found inside that vehicle. In his motion for a subpoena, Mr. Hall wants the Pittsburgh Bureau of Police to produce discovery related to his prior interactions with police, his criminal history, and crime data for the area in which the stop and search occurred. The government has agreed to obtain and produce some but not all the requested discovery. *See* ECF 75. Mr. Hall would like the Court to subpoena the remaining information.

After carefully considering Mr. Hall's request, the Court finds that his requested subpoena is facially overbroad and nonspecific in many respects but that certain information regarding his prior interactions with police and criminal history is relevant and potentially admissible at the motion to suppress hearing. The Court will therefore grant his request in part and deny it in part.

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas in criminal proceedings, including "in connection with hearings, such as pre-trial motions to suppress." *United States v. Taylor*, No. 14-117, 2014 WL 5786535, at *2 (N.D. Cal. Nov. 5, 2014) (collecting cases); *see also* 2 Charles Alan Wright, et al.,

Fed. Prac. & Proc. Crim. § 272 (4th ed.) ("A subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, for determination of an issue of fact raised by a pre-trial motion, or for post-trial motions."). That said, Rule 17(c) "was not intended to be a broad discovery device, and only materials that are 'admissible as evidence' are subject to subpoena under the rule." *United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (citation omitted). "The test for enforcement is whether a subpoena constitutes a good faith effort to obtain identified evidence rather than amounting to a general 'fishing expedition' that attempts to use the rule as a discovery device." *United States v. Cuthbertson,* 630 F.2d 139, 144 (3d Cir.1980) (citations omitted).

To meet this test, the party seeking documents through Rule 17(c) bears the burden of "clear[ing] three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). Additionally, where a party is seeking pre-hearing production of documents, rather than the production at the hearing, as is the case here, that party must also establish: (i) "that the documents are not otherwise procurable reasonably in advance of [the proceeding] by exercise of due diligence"; and (ii) "that the party cannot properly prepare for the proceeding without such production and inspection in advance of [the proceeding] and that the failure to obtain such inspection may tend unreasonably to delay the proceedings." *Id.* at 699-700. Mr. Hall can only meet these exacting standards for some but not all his requested documents.

### A.   Documents related to Mr. Hall.

Mr. Hall first requests the following categories of documents related to his prior interactions with the Pittsburgh Bureau of Police and his criminal history:

1) Arrest/Summons Reports, Investigative Reports, intelligence reports, initial reports, Supplemental Reports, field contact reports, Gun Task Force Firearms Reports, case closing reports, requests for laboratory or

> forensic services (e.g., fingerprints or DNA), and forensic service and laboratory reports;
>
> 2) Summaries, reports, memos or other writings referring or relating to Reco Keith Hall a/k/a Larry Budziki, Llarry Budziki, Reco Hall and Rico Hall's association or affiliation with the Crips street gang; and
>
> 3) Documents records and materials relating to the cases assigned the following Offense Tracking Number or Tracking Numbers, all of which are believed to relate to Mr. Hall: J130622-2; G295103-4; G297853-3; G299664-1; G300297-4; G662318-6; G663144-6; G665094-3; G814184-0; G816019-1; G825859-6; G837679-3; and G841352-1.

ECF 71, p. 4. Although there is some significant overlap in these requests, the Court finds that they seek relevant and potentially admissible information, and with a slight modification can be simplified into a single sufficiently specific request

Mr. Hall argues that this information is "relevant and material to establishing the nature and extent of the knowledge of the officers on the scene, and whether the assertions concerning Mr. Hall's past conduct are true or false." ECF 71, p. 5. The Court agrees. The government argues that probable cause existed to search Mr. Hall's bag based, in part, on the officers' prior "personal interaction" with Mr. Hall and their knowledge of Mr. Hall's prior "violent incidents in Pittsburgh and surrounding communities." ECF 76, pp. 17-18. To test that assertion, Mr. Hall needs access to the Pittsburgh Bureau of Police's records of those interactions and incidents. These records are also potentially admissible at the suppression hearing because, as the government concedes, "the Federal Rules of Evidence do not apply," and Mr. Hall may use them to impeach the government's witnesses on cross-examination. *See* ECF 66, p. 10.

The Court also finds that the requests are specific because they are confined to records relating to a single person. In other words, the Pittsburgh Bureau of Police should be able to simply search for documents referring or relating to Mr. Hall to adequately respond to the subpoena. That said, the requests, as framed, are

duplicative. The Court will therefore streamline Mr. Hall's requests by condensing them into a single request for "all summaries, reports, memoranda, or other writings referring or relating to Reco Keith Hall, a/k/a Larry Budziki, Llary Budzik, Reco Hall, and Rico Hall."[1]

Finally, the Court finds that Mr. Hall meets the requirements for pre-hearing production because he has exercised due diligence in seeking to obtain the materials without court intervention before the suppression hearing, and he would be prejudiced if he were unable to obtain the requested information before the hearing. *See United States v. Silva*, No. 15-158, 2015 WL 5895837, at *2 (D. Nev. Oct. 8, 2015).[2]

### B. Documents unrelated to Mr. Hall.

Mr. Hall also requests broad categories of documents relating to crime data in Pittsburgh, including:

1) Documents, records or other materials designating the Lincoln-Lemington section of the City of Pittsburgh as a "high-crime area";

2) The data underlying the offenses and arrests reported in the "assault," "robbery," "criminal homicide," "other assaults," "weapons," and "drug abuse violations" categories reported on the Pittsburgh Bureau of Police Interactive Crime Dashboard (*see* https://pittsburghpa.gov/publicsafety/crime-data) for the neighborhoods comprising Zone 5 individually (Stanton Heights, Morningside, Highland Park, Lincoln-Lemington-Belmar, Garfield, East Liberty, Larimer, Homewood West, Homewood North, Homewood South, Friendship and Bloomfield) and Zone 5 in the aggregate;

---

[1] This revised request tracks the spirit of the parties' agreement that the government would provide certain information related to Mr. Hall's prior cases. ECF 75, ¶¶ 2-4. The Court's order simply expands on this baseline to include all records the Pittsburgh Bureau of Police has in its possession related to Mr. Hall.

[2] As for the actual subpoena, the government is correct that these documents should not be produced to directly to defense counsel. ECF 66, p. 12. Instead, under Rule 17(c), those documents must be produced to the Court itself. *See* Fed. R. Crim. P. 17(c)(1).

3)     Documents, records, and information, specifically "Crime Data" as [the] term is used by the Pittsburgh Bureau of Police, establishing the frequency with which officers are dispatched on, respond to, make arrests on "service calls" relating to "shots fired," "aggravated assaults," or "violations of the Uniform Firearms Act" in Zones 1, 2, 3, 4, 5, and 6, as well as each of the neighborhoods comprising Zone 5.

ECF 71, pp. 5-7. These requests fail because they are neither relevant to the contested issues presented by Mr. Hall's suppression motion nor specific enough.

Mr. Hall argues that he needs this information because it "appears Detective Burdette's report and testimony—which referenced directly or indirectly 'high crime area,' 'furtive movements,' 'odor of marijuana'—was designed to establish the facts and circumstances necessary to support a warrantless arrest or search." *Id.* at p. 5. But after reviewing the government's response in opposition to Mr. Hall's motion to suppress, that doesn't appear to be the case. That is, the government asserts the officers had probable cause to search the vehicle in which Mr. Hall was riding for three reasons: (i) the officers smelled burnt marijuana coming from the vehicle, (ii) the officers had previously found marijuana illegally on or around Mr. Clark's and Mr. Hall's person, (iii) the officers had reason to believe Mr. Hall was armed and dangerous based in their prior interactions with him and his criminal history, and (iv) the officers saw Mr. Hall reaching towards the center console before they pulled the car over and then again when they approached the car after the stop. ECF 76, pp. 13-20. None of these bases for probable cause rely on the claim that the stop was conducted in a "high-crime area." Rather, they are all based on what the officers knew about Messrs. Clark and Hall, specifically, and what they observed at the time of the stop. The information sought by Mr. Hall about the characteristics of the Lincoln-Lemington neighborhood of Pittsburgh is therefore neither relevant nor material to the Court's resolution of Mr. Hall's motion to suppress.

Even if the information were relevant, the requests themselves aren't specific enough for the Court to issue a subpoena. Mr. Hall generically requests all

"documents, records, information, or other materials" related to the designation of Lincoln-Lemington area of Pittsburgh as a high-crime area, without identifying any specific type of document.  *See, e.g.*, *United States v. Indivior Inc.*, No. 19-16, 2020 WL 616167, at *3 (W.D. Va. Feb. 10, 2020) ("Rule 17(c) subpoena requests for 'any and all' documents are … too broad to meet the test outlined in *Nixon*.") (cleaned up); *United States v. Wai Lun Ng*, No. 07-24, 2007 WL 3046215, at *3 (W.D.N.C. Oct. 16, 2007) (quashing an "any and all" request for lack of specificity).  As for the "crime data," Mr. Hall broadly requests data pertaining to twelve separate neighborhoods, when the stop at issue only occurred in one.  He also requests data for all "offenses" and "arrests" within certain general categories without further specifying the offenses at issue.  While some additional data may be necessary for comparison purposes to determine what constitutes a "high-crime area," this request is overbroad.  This overbreadth is evidenced by the fact that the government claims such a search yields an unwieldy data set of over 14,000 offenses.  ECF 66, p. 8.  As a result, these requests fail to clear two of the three essential hurdles to production.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Mr. Hall's Motion for an Order of Court Authorizing the Service of Subpoena on the Pittsburgh Bureau of Police for the Production of Documents and Records Prior to a Hearing (ECF 26) is **GRANTED in part and DENIED in part**.

It is hereby **ORDERED** that Mr. Hall is granted leave to serve a subpoena on AO Form 89B that commands the  Pittsburgh Bureau of Police to produce "all summaries, reports, memoranda, or other writings referring or relating to Reco Keith Hall, a/k/a Larry Budziki, Llary Budzik, Reco Hall, and Rico Hall" to the United States District Court for the Western District of Pennsylvania, Chambers of

Honorable J. Nicholas Ranjan, 700 Grant St., Courtroom 6C, Pittsburgh, Pennsylvania 15219, on or before 10:00 am August 19, 2021.[3]

Dated this 5th day of August, 2021.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge

---

[3] The subpoena shall also indicate that the Pittsburgh Bureau of Police may also contact the Court's courtroom deputy, Alex Vahlsing, by email at alexander_vahlsing@pawd.uscourts.gov to make arrangements for producing the responsive documents electronically, such as by email or a secure dropbox.